IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :
                              :
        V.                    :        CRIMINAL NO. 1:CR-00-46-01
                              :
R. STEVEN STACKPOLE           :



PETITIONER'S REPLY TO GOVERNMENT'S ANSWER
TO PETITIONER'S MOTION UNDER 28 U.S.C. § 2255

The government's answer to Petitioner's motion was received by the Petitioner on Friday, November 26. The reply to the points raised by the government are set forth herein.

A) Ineffective Assistance to Counsel

The government, in its answer to the petitioner's claim of ineffective assistance of counsel for not objecting to the violation of the Interstate Agreement on Detainers (IAD), states that counsel's performance was not deficient, even though the record shows that there was no discussion or hearing with respect to the IAD issue. The government asserts that when the United States is a receiving State, "it shall not be a violation of the agreement on detainers if prior to trial the prisoner is returned to the custody of the Sending State pursuant to an order.... issued after reasonable notice to the prisoner and the U.S. and an opportunity for a hearing."

In this case there was neither a notice to the defendant nor a hearing on the matter. The record is completely bereft of any indication that the defendant was aware of the IAD, that he knowingly waived his rights under the provisions of the IAD or that the Magistrate afforded anyone an opportunity for a hearing on this matter. The government's position is simply that because the parties appeared before Magistrate Smyser and the government recommended that the defendant be released on his own recognizance and the defendant's counsel concurred with the recommendation, that amounted to a hearing at which the defendant knowingly waived his IAD rights. Clearly, the record shows no questioning by Magistrate Smyser with regard to the IAD, and construing the brief colloquy to amount to notice of IAD rights, a hearing on the issue, and knowledgeable waiver of rights, stretches one's imagination.

1

In support of it's position, the government attaches a declaration of petitioner's former counsel, Thomas Thornton. Mr. Thornton specifically states in the second paragraph that he explained to the petitioner afterwards that the Court **granted** the government's recommendation to release him on his own recognizance, and that he would be returned to the custody of New Jersey officials. Mr. Thornton's stated admission that he spoke to the defendant about going back to New Jersey after the Magistrate's order is consistent with the transcript of the proceedings, as set forth in petitioner's initial petition. There was no interruption of that hearing to ascertain what the defendant's position was regarding his either remaining in Pennsylvania to prepare for trial or returning to New Jersey. It is also clear that the Magistrate made no mention of the IAD or inquiry of the defendant's wishes to waive his rights after the defendant's counsel concurred with the government's recommendation.

Finally, with respect to any conversations that the petitioner may have had with his counsel regarding the pros and cons of remaining in Pennsylvania or returning to New Jersey, it is also clear that Mr. Thornton did not specifically discuss the IAD provisions and the defendant's rights under them, and he makes no attempt to say otherwise. Moreover, in addition to the points discussed by Mr. Thornton, the defendant also wished to be able to prepare for his federal trial, and by returning to New Jersey, he was effectively denied the ability to meet with counsel and prepare for the trial.

It is clear under the **Bozeman** case that even a de minimus violation of the IAD would not be considered trivial. In the instant case, the violation was not de minimus, and there were no circumstances justifying its waiver, such as notice to the defendant and a conscious waiver of rights. The Court failed to make sure that the provisions of the IAD were complied with.

B) The **Blakely** Claim

With respect to Petitioner's claim that the enhancements were unconstitutional, the government asserts that Blakely is a new procedural rule and thus is not retroactively applicable to cases on collateral review. It should be noted, however, that **Blakely** is entirely premised on the June, 2000 decision in **Apprendi v. New Jersey**, 530 U.S. 466, 120 S.Ct. 2348 (2000). In fact, in the minutes of the Supreme Court argument in **U.S. v. Booker** and **U.S. v. Fan-Fan**, the Supreme Court Justices constantly refer to Blakely/Apprendi or Apprendi/Blakely as synonomous. Accordingly, the Blakely decision should apply to all cases which are subsequent to June, 2000. The Supreme Court will be issuing an opinion shortly in the case of **United States v. Booker**, (No. 04-104) and **United States v. Fan-Fan**, (04-105),

which should confirm the applicability of the **Blakely** decision to the instant case. Attached hereto are portions of the minutes of the argument in those cases (as reported by Alderson Reporting Company, Inc., Washington, D.C.) The underlined portions show how the attorneys and the Justices viewed the Apprendi/Blakely decisions as a unified approach. Accordingly, the Blakely decision is applicable to the instant case.

Respectfully submitted,

_____
R. Steven Stackpole

```
 1      IN THE SUPREME COURT OF THE UNITED STATES
 2    - - - - - - - - - - - - - - - -X
 3    UNITED STATES,                  :
 4           Petitioner               :
 5           v.                       :  No. 04-104
 6    FREDDIE J. BOOKER; and          :
 7    - - - - - - - - - - - - - - - -:
 8    UNITED STATES,                  :
 9           Petitioner               :
10                                    :  No. 04-105
11           v.                       :
12    DUNCAN FANFAN                   :
13    - - - - - - - - - - - - - - - -X
14                    Washington, D.C.
15                    Monday, October 4, 2004
16         The above-entitled matter came on for oral
17    argument before the Supreme Court of the United
18    States at 1:00 p.m.
19    APPEARANCES:
20    PAUL D. CLEMENT, ESQ., Acting Solicitor General,
21    Department of Justice, Washington, D.C.; on behalf
22    of the Petitioner.
23    T. CHRISTOPHER KELLY, ESQ., Madison, Wis.; on
24    behalf of the Respondent Booker.
25
```

```
 1   insofar as it does not urge that we reverse
 2   Blakely, I know that you want us to do that as
 3   well.  But assuming we adhere to Blakely, it seems
 4   to me you have a cure that doesn't correspond to
 5   the disease.  You say that the reason the right to
 6   jury trial does not apply here is because, after
 7   all, these sentences have not been prescribed, or
 8   these maximums have not been prescribed by the
 9   legislature, but rather, have been prescribed by a
10   quasi-judicial agency.
11           But the right of jury trial is meant to
12   protect against whom?  Who are you worried about
13   when you say, "I want to be tried by a jury."
14   You're not worried about the legislature, you're
15   worried about the judges, precisely.  So I don't
16   care if the upper level of the Guidelines were
17   actually prescribed by a court, as opposed to the
18   Commission which is, I don't know what it is, but
19   it's not a court.
20           But even if it were prescribed by a court,
21   how would that eliminate the jury trial problem?
22   The whole reason for jury trial is we don't trust
23   judges.
24           MR. CLEMENT:  With respect, Justice
25   Scalia, I'd like to make two observations.  One, I
```

```
 1    don't think the jury trial right is just a
 2    juxtaposition of the role of the jury versus the
 3    role of the judge, because if that were the only
 4    factor at issue in this Court's Sixth Amendment
 5    jurisprudence, it would be very difficult to
 6    explain why it is that judicial fact-finding can
 7    have the effects that it can under a purely
 8    discretionary system, yet this Court has upheld
 9    that time and time again.
10              The second point I'd like to make, is I do
11    think that this Court's Apprendi to Blakely line
12    of cases  -
13              JUSTICE GINSBURG:  Can we just go back to
14    the point you just made, it's a little different
15    when the judge has discretion and there's no --
16    the judge has discretion to take a whole bunch of
17    things into account, but they're not quantified.
18    And I think that was dramatically illustrated, the
19    difference, by the decision of Judge Lynch when he
20    said, "Well, I'll go back to the old ways of doing
21    it, I'll look at the Guidelines for some advice,"
22    he comes out with twenty-four months instead of
23    thirty-three months.
24              So I think there is a huge difference
25    between a judge taking account of many, many
```

```
 1   guidelines, so long as they are still binding, it
 2   seems to me you still need a jury finding, or you
 3   haven't escaped Apprendi.
 4           MR. CLEMENT: A couple of observations,
 5   Justice Scalia. First of all, you're exactly
 6   right, since 1812 we've abandoned a system where
 7   judges can define the elements of crimes. And
 8   that's why, if I leave you with one thought on the
 9   remedy, I would think that it's inappropriate to
10   allow an entity within the judicial branch to have
11   that effect on a prospective basis. I think that
12   would be a very serious separation of powers
13   problem. I think it would dwarf the separation of
14   powers problem that at least you found quite
15   significant in the Mistretta case.
16           Now, if I can address Justice Kennedy's
17   question about the appeals system simply
18   replicating the Apprendi or the Blakely problem.
19   First of all, we would suggest that the appeal
20   process that you've envisioned would not violate
21   Apprendi and Blakely. And that's one of the
22   reasons that we think the Commission wouldn't
23   violate Blakely. Because what we see is a
24   distinction in this court's cases. They have --
25   this Court has that judicial discretionary
```

1    you lose on this point, we take the approach of,
2    in that way, making the guidelines advisory?
3             MR. CLEMENT:  I would -- I would take the
4    approach that you should make the advisory -- the
5    advisory guidelines -- the guidelines as advisory.
6             Now, with respect to whether or not you've
7    escaped from the burden of serving on the
8    sentencing commission, I don't think that the
9    reading of 3742, the appeal provision, that you've
10   envisioned is necessarily foreordained.  I think -
11   -
12            JUSTICE KENNEDY:  Well, have you escaped
13   Apprendi?  If discretion is cabined by guidelines
14   and appellate courts review, for the abuse of
15   discretion in applying those guidelines, why isn't
16   that the same kind of entitlement that the
17   Apprendi/Blakely opinion is predicated on to begin
18   with?
19            JUSTICE SCALIA:  Absolutely.  Vote me for
20   that.  I mean, after all, judges used to define
21   the elements of crimes, didn't they?  And the mere
22   fact that the elements at common law were defined
23   by judges rather than by the legislature didn't
24   mean that you didn't have to have a jury find
25   them.  So if courts are going to establish the

CERTIFICATE OF SERVICE

      This is to certify that on November 30th, 2004 I served a copy of Petitioner's reply on the Office of the U.S. Attorney, Harrisburg, Pa., by depositing the same in a U.S. mailbox. The address for the U.s. Attorney office is 228 Walnut St., Harrisburg, PA. 17108.

R. Steven Stackpole