IN THE UNITED STATES

COURT OF APPEALS FOR THE THIRD CIRCUIT



CRIMINAL NO. 1:CR00-46-01
CIVIL NO. CV-04-1953

------------------------------------------

UNITED STATES OF AMERICA

v.

R. STEVEN STACKPOLE

Request For Certificate
of Appealability with Respect
to Denial of Motion Pursuant
to 28 U.S.C. 2255 and for
Reinstatement of Appeal Due to Failure
of Counsel to Submit Coherent
Apprendi arguments and to Contest
Erroneous Grouping of Mail Fraud
and Money Laundering Courts

Petitioner, R. Steven Stackpole, filed a motion pursuant to
~~motion pursuant to~~ 28 U.S.C. 2255 on or about August 26, 2004. That
motion sought relief with respect to two issues: 1) denial of eff-
ective assistance regarding counsels failure to object to violation
of the Interstate Agreement on Detainers; and 2) violation of defen-
dant's constitutional rights because of sentence enhancements not
conttained in indictment nor found by the jury. Defendant subsequently
attempted to add a third ground - the failure of counsel to object to
the separate grouping of counts related to  mail fraud and money lau-
ndering.

The court denied the petitioners motion in full. A copy of the
motion papers, answering papaers, and reply papers are attached hereto.

The Petitioner wishes to appeal the District COurt's ruling
that <u>Blakely v. Washington</u>, 124 S.Ct.253, 159 L. Ed. 2d 403 (2004) cannot
be applied retroactively to cases on collateral review, the court
citing its own decision in ~~the~~ <u>United States v. Shade</u>, No. 1 : CR-02-144-02

as well as <u>United States v. Swinton</u>, 333 F. 2d 481 (3rd Cir. 2003).

It should be noted, however, that petioner's appellate counsel Daniel Siegel, attempted to make an argument against Petitioners increased sentence as aresult of enhancements. This is what Petitioner understood the argument to be. However, counsel inexplicably linked the ruling in <u>Apprendi v. New Jersey</u> , 530 U.S. 466 (2000) with the District Court's instruction on liability pursuant to <u>Pinkerton v. United States</u> 328 U.S. 640 (1946) without explaining the connection. As stated by this Court in its ruling of April 3, 2003:

> "Appellants' second argument is apparently that the
> District Court's instuction on the liability of co-
> conspirators pursuant to <u>Pinkerton v. United States,</u>
> 328 U.S. 640 (1946), was somehow in violation of <u>Ap-</u>
> <u>prendi v. New Jersey,</u> 530 U.S. 466 (2000), However,
> appellants have not made at all clear how or why they
> believe an <u>Apprendi</u> violation to have occured.

It is clear that this Court acknowledged the fact that Appellant's arguments regarding Apprendi were improperly developed. Appellant has valid <u>Apprendi</u> arguments based on the District Court, and it is respectfully requested that the District COurt's ruling that <u>Blakely</u> is not retroactive to Petitioner's case be reversed because his Apprendi arguement was made on appeal prior to the <u>Blakely</u> decision and amounted to "plain error" or in the alternative, that Petitioner's appeal be reinstated with respect to this issue as a result of the ineffective assistance of counsel.

Petitioner also is requesting that this Court reinstate his appeal with regard to the erroneous computation of his sentence, which error was not objected to by trial counsel or by appellate counsel; the failure to argue the issue by appellate counsel was a denial of Petitioner's right to effective assistance of counsel, and was also "plain error."

Petitioner discovered this error subsequent to his submission of his motion under 28 U.S.C. 2255 because he had experienced difficulty and delays in obtaining the <u>Cordo</u> brief and decision from the clerk of the U.S. District Court, were not abtained until after the submission of his motion and the one year period for submitting the motion.

It is clear that appellate counsel was made aware of this issue because he was on the list of those served with the briefs of his co-defendant,

Joseph Cordo, and the appeals were consolidated.

In this connection, it should be noted that although the same bank checks were utilized by the government with respect to the jury findings and convictions for mail fraud and money laundering, the District COurt treated them as two distinct groups for purpose of guildlines grouping, which is at variance with decisions of the Third Circuit.

As stated by petitioner's co-defendant in his appellate brief on this issue, "at least three panels of this court, within the last three years, have recognized that money laundering counts group under USSG Sec. 3D1.2 (b) with courts charging the fraud that generated the proceeds in question, in circumstances like those involved in this case." See Aob46, citing United States v. Smith, 186 F. 3d 290 (3rd Cir. 1999) (such grouping was 'appropriate'); accord, United States v. Diaz, 245 F. 3rd 294 (3rd Cir. 2001) (Court must group where rule applies).

Thus, it is submitted that the failure to group the mail fraud and money laundering accounts was "plain error" on the part of the District Court especially in light of the Diaz case, which was published before the Respondents sentencying. Accordingly, the 2 points enhancement to the guidelines level resulting from the multiple group calculations was erroneous. Appellate counsel was aware of co-defendant's aguement in ths matter, since it was part of a consolidated appeal. His failure to include this argument was clearly a result of ineffective assistance of counsel.

Respondent is to be moved this coming week from FCI Fort Dix to the sattelite low facility at Elkton, Ohio. Accordingly, he wishes any correspondence from the Court to be sent to him at the following address:

R. Steven Stackpole<br>
c/o Lori Stackpole<br>
406 Prospect Avenue<br>
Hackensack, New Jersey 07601

Respectfully submitted,

R. Steven Stackpole

CERTIFICATE OF SERVICE

This is to certify that on February 7, 2005, I served a copy of petitioners reply request on the office of U.S. Attorney, Harrisburg, PA by depositing the same in a U.S. mail box The address for the U.S. Attorney office is 288 Walnut Street Harrisburg PA, 17108

R. Steven Stackpole

AO 243
REV 6/82

MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District Middle District of PA Harrisburg | |
|---|---|---|
| Name of Movant<br>R. Steven Stackpole | Prisoner No.<br>10041-067 | Docket No.<br>00-CR-00046-01 |

Place of Confinement
FCI Fort Dix (West), P.O Box 7000 West Fort Dix, NJ 08640

(include name upon which convicted)

UNITED STATES OF AMERICA        V.        R. STEVEN STACKPOLE

(full name of movant)

## MOTION

1. Name and location of court which entered the judgment of conviction under attack  U.S. District
Court, 228 Walnut Street, Harrisburg, PA 17108

2. Date of judgment of conviction _____

3. Length of sentence  150 months

4. Nature of offense involved (all counts)  Mail Fraud, Conspiracy to mail fraud,
Money Laundering, Conspiracy to Money Laundering

_____

_____

_____

5. What was your plea? (Check one)
   (a) Not guilty      ☒
   (b) Guilty          ☐
   (c) Nolo contendere ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

   _____

   _____

   _____

6. Kind of trial: (Check one)
   (a) Jury       ☒
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☒ No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☒ No ☐

(2)

AO 243
REV 6/83

9. i you did appeal, answer the following:

(a) Name of court __U.S. Court of Appeals for the Third Circuit__

(b) Result __Denied__

(c) Date of result _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?
Yes ☐ No ☐

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court __U.S. District Court, Harrisburg, P.A.__

(2) Nature of proceeding __Motion under 18 USC 2255__

(3) Grounds raised__ __Various, relating to ineffective assistance of counsel.__

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ , No ☒

(5) Result__ __Withdrawn without prejudice__

(6) Date of result _____

(b) As to any second petition, application or motion give the same information:

(1) Name of court __U.S. District Court, Harrisburg, PA__

(2) Nature of proceeding __Motion under 18 USC 2255__

(3) Grounds raised__ __Various, relating to ineffective assistance of counsel__

AO 243
REV 6/82

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☒

(5) Result___ Withdrawn without prejudice_____

(6) Date of result _____ _____

(c) As to any third petition, application or motion, give the same information:

(1) Name of court ____ N/A _____

(2) Nature of proceeding _____

_____

(3) Grounds raised_____

_____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐
(5) Result _____
(6) Date of Result _____

(d) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
(1) First petition, etc.      Yes ☐ No ☒
(2) Second petition, etc.     Yes ☐ No ☒
(3) Third petition, etc.      Yes ☐ No ☐

(e) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____ N/A _____

_____

_____

12. State concisely every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(4)

AO 243
REV 6'82

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impanelled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A.  Ground one: ___ See Attached _____

_____

Supporting FACTS (tell your story *briefly* without citing cases or law: _____

_____

_____

_____

_____

_____

_____

B.  Ground two: _____

_____

Supporting FACTS (tell your story *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

C.  Ground three: _____

_____

Supporting FACTS (tell your story *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

AO 243
REV 6/82

D. Ground four: _____

Supporting FACTS (tell your story *briefly* without citing cases or law): _____

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them: _____

    Denial of effective assistance of counsel

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
    Yes ☐  No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

    (a) At preliminary hearing   Thomas A. Thornton, Esq, Federal Public Defender's
    Office, 100 Chestnut Street, Suite # 306 Harrisburg, PA 17101

    (b) At arraignment and plea _____

    (c) At trial  Thomas A. Thornton, Esq, address as above

    (d) At sentencing  Thomas A. Thornton, Esq, Address as above

AO 243
REV 6/82

(c) On appeal _____ Daniel Siegel, 100 Chestnut Street Harrisburg, PA 17101

(f) In any post-conviction proceeding _____ N/A

(g) On appeal from any adverse ruling in a post-conviction proceeding _____ N/A

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☒ No☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☒

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

N/A

(b) Give date and length of the above sentence: _N/A

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☐  N/A

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

_8/26/04_
(date)

_____
Signature of Movant

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA       :
      :
            v.       :    00-CR-00046-01
R. STEVEN STACKPOLE,       :
        Defendant       :

MOTION TO VACATE SENTENCE PURSUANT TO 18 USC 2255 DUE TO DENIAL
OF EFFECTIVE ASSISTANCE WITH RESPECT TO COUNSEL"S FAILURE TO
OBJECT,VIOLATION OF INTERSTATE AGREEMENT ON DETAINERS(IAD) AND
AS A RESULT OF UNCONSTITUTIONAL SENTENCE BECAUSE OF ENHANCEMENTS
NOT CONTAINED IN INDICTMENT NOR FOUND BY THE JURY.


   This motion is filed timely within one year of the entry of
final judgement inthis case (No. 03-5089). Attached hereto is a
copy of the Supreme Court notice dated October 6, 2003, showing
date of final judgement of conviction


Ground One: Denial of effective assistance of counsel because of
failure to object to violation of provisions of Interstate Agree-
ment on Detainers (IAD).

   At the time of the indictment in this case, petitioner was
serving a New Jersey state sentence for "misconduct by corporate
official", a fraud offense, and was awaiting trial on a second
statecharge of "theft by deception","misappropriation of entrusted
property," and securities fraud." Petitioner was taken from state
custody and put in federal custody sometime in March, 2000. At
that time, the defendant was fourdays short of completing a 90 day
rehabilitaion program in the state facility. After petitioner was
arraigned in Federal District Court in Harrisburg, he was returned
to the state of New Jersey, despite the fact that he was awaiting
trial on the federal charges.

   Under the provisions of Article 1Ve of the Interstate Agree-
ment

on Detainers (18 USCS Appx), a criminal defendant who is trans-
ported to a receiving state, even for one day, may not be returned
to the sending state prior to the trial at the receiving state.
The United States is a party to this agreement, and for that pur-
pose, is deemed to be either a receiving or sending state. If the
federal government is a receiving state,as in the instant case, the
charges must be dismissed, but can be renewed in some situations
depending on the seriousness of the charges. Bozeman v. Alabama,
533 US 146, 150, Led 2d 188, 121 SCH 2079 (2001).

In this case the federal indictment in Pennsylvania caused the
petitioner to be removed from New Jersey state custody. The federal
court's decision to not remand the defendant pending trial, but rather
to release him on his own recognizance in order for the state to
take him back, effectively denied the defendant of his rights under
the IAD and the Bozeman case. It is obvious that the IAD could
easily be circumvented every time by returning a defendant to a
sending state by putting the defendant on ROR. This type of practice
should not be permitted.

Not only did this order result in a circumvention of the IAD
provisions, it also resulted in the petitioner being unable to pre-
pare for trial. His attorney was in Harrisburg, Pennsylvania, and
access to him was effectively denied by returning him to New Jersey
and by moving him all over the United States in journies to and from
federal court. In fact, petitioner arrived in Pennsylvania only about
two days before his trial began. This gave petitioner no time to
meet with counsel and prepare for trial, thereby effectively denying
him his constitutional right to assistance t6 counsel.

In addition, the time between the federal indictment and the
sentencng was not credited to petitioners prison time becuase he was
"not in federal custody." At petitioners arraignment hearing before
the honorable J. Andrew Smyser, U.S. Magistrate Judge, on April 18,
2000, the following collogy took place:

The Court: Mr. Daniel, as to defendant Steven Stackpole, does the
government state a position?

Mr. Daniel: Yes, your Honor. We believe that the terms of his re-
lease are essentially moot in this case, Your Honor. Mr. Stackpole
is currently serving a term of incarceration in the state of New Jersey

which is not likely to soon expire. Therefore, we ask that he be for purposes of our charges released on his own recognance. In the event that his status changes we would ask the court for permission to revisit the issue.

The Court: Mr. Thornton?

Mr. Thornton:We would agree with that, your honor.

The Court: All right what will be ordered then is this case at this time is that Mr. Stackpole shall be released on his owm promise to appear without further conditons. This order is entered with the understanding that if the defendant's present custody status were to change, the United States may seek a redetermination by this court of conditions of release, and additional conditions of release would very likely be imposed.

Not only did defendant's counsel, Thomas Thornton, not object to the defendants shuttling, he failed to file a motion for dismissal of the case under the ruling of the Bozeman case. In these repects counsel's actions didn't meet the minimum standards required and ex- pected of attorneys who practice in the field of criminal law. In this conection, it should also be noted that the petitioner was never asked whether he wished to waive his IAD rights, and he never agreed to waive them.

Accordingly, the conviction and all of the charges against de- fendant should be vacated and dismissed.


Ground Two:Petitioner's sentence was unconstitutional because the trial judge, rather than the jury, found that the base level of each of the guiddlines involved should be enhanced by so called "relevant conduct," including the following: enhancement for leadership roles, enhancement for money involved which was not found by a jury, en- hancement for perjury. None of these enhancements were charged in petitioners indictment and all of these inhancements resulted in an increased guiddlines level and more prison time for the petitioner. Because a judge, and not the jury, made these determinations, the petitioers sixth amendment rights were violated, and his sentence should be vacated. (Blakely v. Washington)(2004, Lexis 4573, Case No. 02-1632(2cert)

In addition, petitioner was ordered to serve a term of supervised release and to pay restitution in the amount of $1.2 million. These determinations were made by the judge, rather than the jury, and this part of the sentence should also be vacated for the reasons set forth above.

Respectfully Submitted,

R. Steven Stackpole

8/26/04

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001

October 6, 2003

William K. Suter
Clerk of the Court
(202) 479-3011

Mr. Daniel Isaiah Siegel
Assistant Federal Public Defender
100 Chestnut Street
Suite 306
Harrisburg, PA  17101

**RECEIVED**

OCT  9 2003

FEDERAL PUBLIC DEFENDER
HARRISBURG, PENNSYLVANIA

    Re:  R. Steven Stackpole
        v. United States
        No. 03-5089

Dear Mr. Siegel:

    The Court today entered the following order in the above entitled case:

    The petition for a writ of certiorari is denied.

Sincerely,

*William K. Suter*

**William K. Suter, Clerk**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,    :
                             :
          Plaintiff          :
                             :          CRIMINAL NO. 1:CR-00-46-01
     v.                      :          FILED ELECTRONICALLY
                             :
R. STEVEN STACKPOLE.         :
                             :
          Defendant          :

## GOVERNMENT'S RESPONSE TO DEFENDANT'S
## MOTION TO VACATE UNDER 28 U.S.C. § 2255

## I.    PROCEDURAL HISTORY

Following a jury trial, on October 6, 2000, the petitioner, R. Steven

Stackpole was convicted of all charges in his Indictment, including Conspiracy to

commit Mail Fraud, Mail Fraud(11 counts), Conspiracy to commit Money

Laundering, Money Laundering (5 counts), and Unlawful Monetary Transactions

(7 counts). Following the verdict Stackpole plead guilty to a Money Laundering

Forfeiture count. The charges stemmed from a fraudulent, Ponzi investment

scheme that resulted in more that $3 million in losses to the victims. On April 11,

2001, Stackpole was sentenced by this Court to 150 months incarceration.

Stackpole's direct appeal  was not successful and his conviction and

sentence were affirmed via an unpublished opinion dated April 3, 2003.[1]  A petition for rehearing *en banc* was denied by the Third Circuit on June 24, 2003. Thereafter, a petition for certiorari was denied by the Supreme Court. *Stackpole v. United States*, 124 S. Ct 219 (Oct. 6, 2003).

The instant petition for habeas corpus relief under 28 U.S.C. §2255 was filed September 2, 2004.[2]  On November 8, 2004, the Court directed the government to file a Response within 20 days. The government's Response follows.

## II.    SUMMARY OF THE PETITION

Stackpole advances two grounds for relief.  The first is an allegation that his trial attorney denied him effective assistance of counsel when he failed to object to Stackpole's return to state custody at the time of his initial appearance before Magistrate Judge Smyser.  Noting he was returned to New Jersey for service of a state sentence before his federal charges were adjudicated, Stackpole claims the government violated the Interstate Agreement on Detainers (IAD), 18 U.S.C. App.

---

[1] *See* 64 Fed. Appx. 842, 2003 WL 1785929 (3rd Cir. April 3, 2003)(not selected for publication in the Federal Reporter).

[2] An earlier §2255 petition filed May 5, 2003, was withdrawn by Stackpole and dismissed without prejudice on June 10, 2003, after the Court notified Stackpole by Order dated May 20, 2003, that a subsequent petition raising additional grounds for relief would be precluded by law.

2, and was entitled to have his federal indictment dismissed. In support, petitioner

cites *Bozeman v. Alabama*, 533 U.S. 146 (2001)

The second alleged ground for relief is a claim based upon the Supreme

Court's recent ruling in *Blakely v. Washington*,  124 S.Ct. 2531 (June 24, 2004).

Stackpole claims his sentence is unconstitutional because the Court, and not the

jury, enhanced his sentence for various guideline factors, including the loss

amount, his aggravated role in the offense, and his perjury during trial. Stackpole

also argues the Court, not the jury, improperly ordered him to undergo a term of

supervised release and to pay $1.2 million in restitution.

## III.    THE INEFFECTIVENESS OF COUNSEL CLAIM

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court

reaffirmed that the Sixth Amendment guarantees a criminal defendant the effective

assistance of counsel: "An accused is entitled to be assisted by an attorney,

whether retained or appointed, who plays the role necessary to ensure that the trial

is fair." *Id.* at 685. The Court held that a claim of ineffective assistance of counsel

has two components -- inadequate performance by counsel, and prejudice resulting

from that inadequate performance. The first part of the test requires the petitioner

to show counsel's performance was deficient. This requires a showing that

counsel made errors so serious counsel was not functioning as the "counsel"

guaranteed by the Sixth Amendment. *Id.* at 687.

Even if the petitioner satisfies the first part of the *Strickland* test, he is not entitled to relief unless he can also satisfy the second part by demonstrating that counsel's unprofessional errors actually prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the petitioner of a fair trial whose result is reliable. *Id.* at 687. Petitioner has the burden of establishing prejudice, and it is not enough to show the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that could conceivably influence the outcome undermines the reliability of the result. *Id.* at 693. Instead, "[t]he defendant must show that there is a reasonable probability that, *but for* counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694 (emphasis supplied).

In this case, Stackpole can not meet the first prong of the *Strickland* test - he can not show counsel's performance was deficient. The Interstate Agreement on Detainers (IAD) establishes uniform procedures for lodging and executing a detainer. The IAD, which has been executed by 48 States and the United States, mandates that a receiving State must try a defendant serving a sentence in a another jurisdiction within 120 days of his arrival. *Id.*,§ 2,Art. IV(c). Moreover, if the receiving State returns the prisoner to the sending State prior to trial, charges "shall" be dismissed with prejudice. *Id.*, § 2,Art. IV(e).

However, Stackpole conveniently overlooks another significant aspect of the Agreement. An exception applies where the United States is the receiving State and the prisoner is afforded a hearing prior to his return to the sending State.

> Notwithstanding any provision of the agreement on detainers to the contrary, in a case in which the United States is a receiving State -
>
> ...
>
> (2) it shall *not* be a violation of the agreement on detainers if prior to trial the prisoner is returned to the custody of the sending State pursuant to an order of the appropriate court issued after reasonable notice to the prisoner and the United States and an opportunity for a hearing.

18 U.S.C. App. 2, §9 (emphasis supplied).

Such is the situation in the instant case. As Stackpole himself notes, he was afforded a Rule 5, initial appearance hearing before U.S. Magistrate Judge J. Andrew Smyser in Harrisburg, PA on April 18, 2000. Noting that Stackpole was then serving a state sentence in New Jersey, the government recommended Stackpole be released on his own recognizance. After Stackpole's counsel, Thomas Thornton, Esq., concurred with the government's recommendation, Magistrate Smyser ordered the U.S. Marshals to return Stackpole to New Jersey. This procedure was entirely consistent with the IAD and did not constitute a violation requiring dismissal of Stackpole's indictment. *See United States v. Carnes*, 41 F. Supp. 2d 719, 724 (E.D. Mich 1999). The Supreme Court decision cited by Stackpole, *Alabama v. Bozeman*, 121 S. Ct 2079 (2001), is

distinguishable because the federal government was the Sending State, not the

receiving State, in that prosecution.

Moreover, the government has ascertained that Stackpole personally

concurred in the position advocated by his attorney at the April 18, 2000 hearing.

Attached to this petition is a Declaration executed by Attorney Thomas Thornton.

In his Declaration Attorney Thornton confirms Stackpole told Thornton he did

not want to be incarcerated in the Middle District of PA pending trial and

preferred to be returned to New Jersey. *See* Attachment "A." Thus, Stackpole can

not possibly meet his burden of showing Thornton denied him effective assistance

of counsel.

## IV.    THE *BLAKELY* CLAIM

Stackpole's second contention, that his sentence is unconstitutional because

this Court and not a jury determined his sentencing guidelines, is also merit less.

Stackpole's argument, which is premised upon the Supreme Court's recent ruling

in *Blakely v. Washington*, 124 S.Ct. 2531 (June 24, 2004), is inapplicable to this

petition.

The Supreme Court has determined that decisions announcing new rules of

procedure like *Blakely* are not retroactively applicable to cases on collateral

review. *See Shriro v. Simmerlin,* 124 S .Ct. 2519 (2004)(*Ring v. Arizona*, 122 S.

Ct. 2428 (2002) not retroactive to cases on collateral review). New rules of

procedure do not apply retroactively because they do not produce a class of

persons convicted of conduct the law does not make criminal, but merely raise the

possibility that someone convicted via the use of the invalidated procedure might

have been acquitted otherwise. Rules that only regulate the manner of

determining a defendant's culpability are procedural for retroactivity purposes.

*Id.,* at 2524.

*See also* United States v. Swinton, 333 F.3d 481 (3d Cir.), *cert denied,* 124 S. Ct.

458 (2003)( *Apprendi v. New Jersey*, 120 S W. Ct. 22348 (2000), not retroactive to

cases on collateral review).

Since *Blakely* merely held that juries, not judges, must determine the factors

that enhance a defendant's sentence above a proscribed statutory range, and did

not alter the range of conduct or the class of persons the law punishes, it

constitutes a new procedural as opposed to substantive rule for purposes of

retroactively. Therefore, Stackpole can not rely on *Blakely* to challenge his 150

month sentence in the instant § 2255 petition.

## V.    CONCLUSION

Wherefore, based on the above, the government respectfully requests the

Court deny Stackpole's § 2255 petition.

Respectfully submitted,

THOMAS A. MARINO
UNITED STATES ATTORNEY


/s/ Kim Douglas Daniel
KIM DOUGLAS DANIEL
Assistant U.S. Attorney
P.O. Box 11754
Harrisburg, Pennsylvania 17108
Attorney I.D. P.A. 31038
(717) 221-4482
(717) 221-4582
kim.daniel@usdoj.gov

## DECLARATION OF THOMAS THORNTON, ESQ.

*I hereby declare under penalty of law that the following is true and accurate to the best of my knowledge, information and belief:*

1) I was court appointed defense counsel in the case of USA v. R. Steven Stackpole and represented him during Mr. Stackpole's Rule 5, initial appearance hearing before the Honorable J. Andrew Smyser in Harrisburg, PA on April 18, 2000.

2) During the hearing the issue of bail was addressed by the Court. I recall explaining to Mr. Stackpole that if the Court granted the government's recommendation to release him on his own recognizance, he would be returned to the custody of New Jersey officials where Stackpole was then serving an unrelated state sentence.

3) I recall Mr. Stackpole telling me that he wanted to go back to New Jersey because of ongoing proceedings involving his New Jersey convictions. I also recall Stackpole telling me that he was trying to reconcile with his family and wanted to be closer to them in New Jersey. I am also sure that I advised Mr.Stackpole it was best to return to New Jersey because the last thing he would want do is be held locally at the Dauphin County Prison pending trial.. I also recall Mr. Stackpole telling me he had voluminous files of legal work and research at the New Jersey facility. None of this paperwork came to Harrisburg with Mr. Stackpole and he was worried about protecting it.

THOMAS THORNTON, Esq.

Date: November 12, 2004

# Responses & Replies

1:00-cr-00046-WWC USA v. Stackpole, et al **CASE CLOSED on 07/10/2003**

## U.S. District Court

## Middle District of Pennsylvania

Notice of Electronic Filing

The following transaction was received from Daniel, Kim entered on 11/17/2004 at 11:32 AM EST and filed on 11/17/2004

**Case Name:**       USA v. Stackpole, et al
**Case Number:**    1:00-cr-46
**Filer:**            USA
**WARNING: CASE CLOSED on 04/11/2001**
**Document Number:** 242

**Docket Text:**
BRIEF IN OPPOSITION by USA as to R. Steven Stackpole re [237] MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 04-1953.) Reply Brief due by 12/2/2004. (Attachments: # (1) Exhibit(s)) (Daniel, Kim)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1027698419 [Date=11/17/2004] [FileNumber=645268-0
] [6c4d376092454c15b0ba830fcb26edcb6ad72cdae1362df797cbaff7b3950bde4be
05e92e946dcaed52e2c8039454ba8fe5cff2a072d82b7ef439de81e2ba434]]
**Document description:** Exhibit(s)
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1027698419 [Date=11/17/2004] [FileNumber=645268-1
] [9f2b1a028618887565489ef5ba531f4a812ff81a58204427f475f3a1803e485871e
9390ec9b0e820b10756186a621e06267445b7f6d8125fe9b5c4fffda6bad4]]

**1:00-cr-46-1 Notice will be electronically mailed to:**

Kim Douglas Daniel    kim.daniel@usdoj.gov, amanda.lau@usdoj.gov

Peter Goldberger    Peter.Goldberger@verizon.net,

**1:00-cr-46-1 Notice will be delivered by other means to:**

Joseph Cordo
FCI-FORT DIX
P.O. BOX 2000

Fort Dix, NJ 08640

Kathleen Cordo
4 Antiqua Avenue
Toms River, NJ 08753

Garrett A. Lardiere
P. O. Box 729
Pt. Pleasant, NJ 08742-0729

R. Steven Stackpole
10041-067
FCI Fort Dix (West)
P.O. Box 7000
Fort Dix, NJ 08640

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,   :

        Plaintiff        :

                    :    CRIMINAL NO. 1:CR-00-46-01

       v.          :    FILED ELECTRONICALLY

                    :

R. STEVEN STACKPOLE.    :

                    :

       Defendant     :

## CERTIFICATE OF SERVICE BY MAIL

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on November 16, 2004, she served a copy of the attached

## GOVERNMENT'S RESPONSE TO DEFENDANT'S
## MOTION TO VACATE UNDER 28 U.S.C. § 2255

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Williamsport, Pennsylvania.

Addressee:

R. Steven Stackpole
Inmate No. 10041-067
FCI Fort Dix (West)
P.O. Box 7000
West Fort Dix, New Jersey 08640

                             s/ Amanda L. Lau
                             AMANDA L. LAU
                             Legal Assistant

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA    :

                                  :

          V.              :             CRIMINAL NO. 1:CR-00-46-01

                                  :

R. STEVEN STACKPOLE        :


PETITIONER'S REPLY TO GOVERNMENT'S ANSWER

TO PETITIONER'S MOTION UNDER 28 U.S.C. § 2255

      The government's answer to Petitioner's motion was received by the Petitioner on Friday, November 26. The reply to the points raised by the government are set forth herein.

    A) Ineffective Assistance to Counsel

      The government,in its answer to the petitioner's claim of ineffective assistance of counsel for not objecting to the violation of the Interstate Agreement on Detainers (IAD), states that counsel's performance was not deficient, even though the record shows that there was no discussion or hearing with respect to the IAD issue. The government asserts that when the United States is a receiving State, "it shall not be a violation of the agreement on detainers if prior to trial the prisoner is returned to the custody of the Sending State pursuant to an order.... issued after reasonable notice to the prisoner and the U.S. and an opportunity for a hearing."

      In this case there was neither a notice to the defendant nor a hearing on the matter. The record is completely bereft of any indication that the defendant was aware of the IAD, that he knowingly waived his rights under the provisions of the IAD or that the Magistrate afforded anyone an opportunity for a hearing on this matter. The government's position is simply that because the parties appeared before Magistrate Smyser and the government recommended that the defendant be released on his own recognizance and the defendant's counsel concurred with the recommendation, that amounted to a hearing at which the defendant know- ingly waived his IAD rights. Clearly, the record shows no questioning by Magistrate Smyser with regard to the IAD, and construing the brief colloquy to amount to notice of IAD rights, a hearing on the issue, and knowledgeable waiver of rights, stretches one's imagination.

In support of it's position, the government attaches a declaration of petitioner's former counsel, Thomas Thornton. Mr. Thornton specifically states in the second paragraph that he explained to the petitioner afterwards that the Court granted the government's recommendation to release him on his own recognizance, and that he would be returned to the custody of New Jersey officials. Mr. Thornton's stated admission that he spoke to the defendant about going back to New Jersey after the Magistrate's order is consistent with the transcript of the proceedings, as set forth in petitioner's initial petition. There was no interruption of that hearing to ascertain what the defendant's position was regarding his either remaining in Pennsylvania to prepare for trial or returning to New Jersey. It is also clear that the Magistrate made no mention of the IAD or inquiry of the defendant's wishes to waive his rights after the defendant's counsel concurred with the government's recommendation.

Finally, with respect to any conversations that the petitioner may have had with his counsel regarding the pros and cons of remaining in Pennsylvania or returning to New Jersey, it is also clear that Mr. Thornton did not specifically discuss the IAD provisions and the defendant's rights under them, and he makes no attempt to say otherwise. Moreover, in addition to the points discussed by Mr. Thornton, the defendant also wished to be able to prepare for his federal trial, and by returning to New Jersey, he was effectively denied the ability to meet with counsel and prepare for the trial.

It is clear under the Bozeman case that even a de minimus violation of the IAD would not be considered trivial. In the instant case, the violation was not de minimus, and there were no circumstances justifying its waiver, such as notice to the defendant and a conscious waiver of rights. The Court failed to make sure that the provisions of the IAD were complied with.

B) The Blakely Claim

With respect to Petitioner's claim that the enhancements were unconstitutional, the government asserts that Blakely is a new procedural rule and thus is not retroactively applicable to cases on collateral review. It should be noted, however, that Blakely is entirely premised on the June, 2000 decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000). In fact, in the minutes of the Supreme Court argument in U.S. v. Booker and U.S. v. Fan-Fan, the Supreme Court Justices constantly refer to Blakely/Apprendi or Apprendi/Blakely as synonymous. Accordingly, the Blakely decision should apply to all cases which are subsequent to June, 2000. The Supreme Court will be issuing an opinion shortly in the case Booker, (No. 04-104) and United States v. Fan-Fan, (04-105),

which should confirm the applicability of the <u>Blakely</u> decision to the instant case.  Attached hereto are portions of the minutes of the argument in those cases (as reported by Alderson Reporting Company, Inc., Washington, D.C.) The underlined portions show how the attorneys and the Justices viewed the Apprendi/Blakely decisions as a unified approach.  Accordingly, the Blakely decision is applicable to the instant case.

Respectfully submitted,

A. Steven Stackpole

CERTIFICATE OF SERVICE

This is to certify that on November 30th, 2004 I served a copy of
Petitioner's reply on the Office of the U.S. Attorney, Harrisburg, Pa.,
by depositing the same in a U.S. mailbox.  The address for the U.S. Attorney
office is 228 Walnut St., Harrisburg, PA. 17108.

R. Steven Stackpole

```
 1        IN THE SUPREME COURT OF THE UNITED STATES

 2     - - - - - - - - - - - - - - X

 3     UNITED STATES,                    :

 4            Petitioner                 :

 5            v.                         :   No. 04-104

 6     FREDDIE J. BOOKER; and            :

 7     - - - - - - - - - - - - - - :

 8     UNITED STATES,                    :

 9            Petitioner                 :

10                                       :   No. 04-105

11                  v.                   :

12     DUNCAN FANFAN                     :

13     - - - - - - - - - - - - - - X

14                       Washington, D.C.

15                       Monday, October 4, 2004

16          The above-entitled matter came on for oral

17     argument before the Supreme Court of the United

18     States at 1:00 p.m.

19     APPEARANCES:

20     PAUL D. CLEMENT, ESQ., Acting Solicitor General,

21     Department of Justice, Washington, D.C.; on behalf

22     of the Petitioner.

23     T. CHRISTOPHER KELLY, ESQ., Madison, Wis.; on

24     behalf of the Respondent Booker.

25
```

1

1    insofar as it does not urge that we reverse

2    Blakely, I know that you want us to do that as

3    well.  But assuming we adhere to Blakely, it seems

4    to me you have a cure that doesn't correspond to

5    the disease.  You say that the reason the right to

6    jury trial does not apply here is because, after

7    all, these sentences have not been prescribed, or

8    these maximums have not been prescribed by the

9    legislature, but rather, have been prescribed by a

10   quasi-judicial agency.

11          But the right of jury trial is meant to

12   protect against whom?  Who are you worried about

13   when you say, "I want to be tried by a jury."

14   You're not worried about the legislature, you're

15   worried about the judges, precisely.  So I don't

16   care if the upper level of the Guidelines were

17   actually prescribed by a court, as opposed to the

18   Commission which is, I don't know what it is, but

19   it's not a court.

20          But even if it were prescribed by a court,

21   how would that eliminate the jury trial problem?

22   The whole reason for jury trial is we don't trust

23   judges.

24          MR. CLEMENT:  With respect, Justice

25   Scalia, I'd like to make two observations.  One, I

1    don't think the jury trial right is just a

2    juxtaposition of the role of the jury versus the

3    role of the judge, because if that were the only

4    factor at issue in this Court's Sixth Amendment

5    jurisprudence, it would be very difficult to

6    explain why it is that judicial fact-finding can

7    have the effects that it can under a purely

8    discretionary system, yet this Court has upheld

9    that time and time again.

10        The second point I'd like to make, is I do

11    think that this Court's Apprendi to Blakely line

12    of cases -

13        JUSTICE GINSBURG:  Can we just go back to

14    the point you just made, it's a little different

15    when the judge has discretion and there's no --

16    the judge has discretion to take a whole bunch of

17    things into account, but they're not quantified.

18    And I think that was dramatically illustrated, the

19    difference, by the decision of Judge Lynch when he

20    said, "Well, I'll go back to the old ways of doing

21    it, I'll look at the Guidelines for some advice,"

22    he comes out with twenty-four months instead of

23    thirty-three months.

24        So I think there is a huge difference

25    between a judge taking account of many, many

Alderson Reporting Company, Inc.
1-800-FOR-DEPO

1111 14th Street, NW, Suite 400                                    Washington, DC 20005

1     guidelines, so long as they are still binding, it
2     seems to me you still need a jury finding, or you
3     haven't escaped Apprendi.
4          MR. CLEMENT:  A couple of observations,
5     Justice Scalia.  First of all, you're exactly
6     right, since 1812 we've abandoned a system where
7     judges can define the elements of crimes.  And
8     that's why, if I leave you with one thought on the
9     remedy, I would think that it's inappropriate to
10    allow an entity within the judicial branch to have
11    that effect on a prospective basis.  I think that
12    would be a very serious separation of powers
13    problem.  I think it would dwarf the separation of
14    powers problem that at least you found quite
15    significant in the Mistretta case.
16          Now, if I can address Justice Kennedy's
17    question about the appeals system simply
18    replicating the Apprendi or the Blakely problem.
19    First of all, we would suggest that the appeal
20    process that you've envisioned would not violate
21    Apprendi and Blakely.  And that's one of the
22    reasons that we think the Commission wouldn't
23    violate Blakely.  Because what we see is a
24    distinction in this court's cases.  They have --
25    this Court has that judicial discretionary

Alderson Reporting Company, Inc.
1-800-FOR-DEPO

1111 14th Street, NW, Suite 400     Washington, DC 20005

1    you lose on this point, we take the approach of,

2    in that way, making the guidelines advisory?

3              MR. CLEMENT:  I would -- I would take the

4    approach that you should make the advisory -- the

5    advisory guidelines -- the guidelines as advisory.

6              Now, with respect to whether or not you've

7    escaped from the burden of serving on the

8    sentencing commission, I don't think that the

9    reading of 3742, the appeal provision, that you've

10   envisioned is necessarily foreordained.  I think -

11   -

12             JUSTICE KENNEDY:  Well, have you escaped

13   Apprendi?  If discretion is cabined by guidelines

14   and appellate courts review, for the abuse of

15   discretion in applying those guidelines, why isn't

16   that the same kind of entitlement that the

17   Apprendi/Blakely opinion is predicated on to begin

18   with?

19             JUSTICE SCALIA:  Absolutely.  Vote me for

20   that.  I mean, after all, judges used to define

21   the elements of crimes, didn't they?  And the mere

22   fact that the elements at common law were defined

23   by judges rather than by the legislature didn't

24   mean that you didn't have to have a jury find

25   them.  So if courts are going to establish the

47

REQUEST TO FILE
SUPPLEMENT TO MOTION UNDER 28 U.S.C. SEC 2255
TO VACATE SET ASIDE, OR CORRECT SENTENCE
BY A PERSON IN FEDERAL CUSTODY

This is a supplement to petitioner's motion under 28 U.S.C.
2255. Petitioner filed the motion on September 2, 2004. As of this
date, there has been no response to the motion by the U.S. Attorney's
office. Accordingly, no harm will be caused by the filing of this supp-
lement, and it is respectfully requested that the Court allow this supp-
lement to be added to the motion.


PETITIONER'S COUNSEL FAILED TO OBJECT TO THE PROPOSED SEPARATE GROUPING
OF THE MAIL FRAUD AND MONEY LAUNDERING COUNTS.
These counts should have been included in a single gruop, and the fail-
ure of counsel to properly object to the computation set forth in the pre-
sentence report resulted in an increased guidelines level of two points.
Although the same bank checks were utilized by the government in con-
nection with the jury findings and convictions for mail fraud and money
laundering, and the victim was the same, the court treated them as two
distinct groups for purposes of guidelines grouping, which is at variance
with decisions of the Third Circuit.
Petitioner's co-defendant, Joseph Cordo, contested this very issue in
his appeal, and the Court of Appeals remanded his case to the District
Court for resentencing in accordance with the established precedents in
this circuit (Docket No. 01-2392), which recognized that money laundering
counts group under U.S.S.G. Sec. 3D1.2(b) with counts charging the fraud
that generated the proceeds in question in circumstances like those in-
volved in this case. United States v. Smith, 186 F.3d 290, 297 (3rd Cir.
1999), United States v. Diaz, 245 F.3d 294, 300 3rd Cir. 2001); United
States v. Omoruyi, 260 F.3d 291, 298 (3rd Cir. 2001). In this case, all
he transactions in question were the same for purposes of both the mail
aud and money laundering and the same victim (the bank) was involved in
h.
ccordingly, it is submitted that the sentence be vacated and that the
entence be calculated without the two points for the grouping.

Respectfully Submitted,

R. steven Stackpole

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA            :
                                    :
          v.                        :       CRIM. NO. 1:CR-00-46-01
                                    :
R. STEVEN STACKPOLE                 :


PETITIONER'S REPLY TO GOVERNMENTS'S
RESPONSE TO SUPPLEMENT TO U.S.C. SEC. 2255 MOTION

        Petitioner received the government's response in this matter on December 15,
2004.

        In the government's response to Petitioner's supplement to his 2255 motion,
it alleges that the standards for ineffective assistance of counsel, as set forth
in Strickland v. Washington, 466 U.S. 668, (1984) were not met by Petitioner because
at the time Attorney Thornton filed his objections to the Petitioner's Presentence
Report in March, 2001, "there was no explicit directive from the Third Circuit
regarding the grouping of mail fraud and money laundering counts." It further
asserts that the Petitioner cannot rely on United States v. Cordo, (Petitioner's
co-defendant in this case), because that case was not decided until April 4, 2003.
The government's arguments in these respects are faulty and ignore some important
basic facts: 1) the case of United States v. Smith, 186 F.3d 290 (3rd Cir. 1999)
had been published approximately two years before that, and had established that
an inquiry should be made, in cases similar to this one, regarding whether the
fraud or the money laundering should be the only one used for sentencing purposes,
and whether the money laundering offense guideline should even apply if it was
outside of the "heartland" for that type of offense.  The grouping of the fraud
and the "kickback scheme" into a single unit for purposes of applying the guide-
lines was deemed appropriate; 2) in United States v. Diaz, 245 F.3d 294 (3rd Cir.
2001), the Third Circuit held that the court must group the charges into a single
group in a case similar to the instant one.  It should be noted that the Diaz
decision was published on March 30, 2001, the week before the Respondent's
sentencing hearing; 3) the case of United States v. Cusumano, as noted below,

1

had been decided ten years prior to the sentencing hearing herein. The fact that important Third Circuit decisions were ignored by Mr. Thornton at the time of the hearing is quite significant in examining whether his conduct in this regard fell below an objective standard of reasonableness. The fact that Petitioner's co-defendant actually made the appropriate argument at his sentencing hearing is indicative of what should have been done. The fact that the Third Circuit affirmed what was already the law on the basis of their earlier decisions, only serves as a confirmation that Respondent's counsel indeed failed to make an argument at sentencing that would have ultimately resulted in a difference in the sentencing. The Petitioner is not arguing that the case of U.S. v. Cordo is retroactive. That case, which is the Petitioner's own case, did not establish a new rule of procedure, as asserted by the government. Rather, the Third Circuit affirmed its Cordo decision on the basis of United States v. Cusumano, 943 F.2d 305 (3rd. Cir. 1991), citing also the Smith and Diaz cases. Clearly, the Court did not believe it was pronouncing a new procedural rule in the Cordo case.

Arguably, all of the points raised by Petitioner in his 2255 motion are based on ineffective assistance of counsel, including the Blakely violation, since Blakely was based on Apprendi, and could have been argued with respect to the enhancements. The failure to argue about the violation of the IAD and the grouping clearly meets all of the tests of Strickland, since the results would have been different with respect to each of these issues.

Respectfully submitted,

R. Steven Stackpole

2

## CERTIFICATE OF SERVICE

This is to certify that on December 18th, 2004 I served a copy of
Petitioner's reply on the Office of the U.S. Attorney, Harrisburg, Pa.,
by depositing the same in a U.S. mailbox.  The address for the U.S. Attorney
office is 228 Walnut St., Harrisburg, PA.  17108.


R. Steven Stackpole

FILED
HARRISBURG, PA

JAN 1 9 2005

_____, CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,           :
        Plaintiff

                                    :

        vs.                         : CRIMINAL NO. 1:CR-00-46-01
                                      CIVIL NO. 1:CV-04-1953
                                    :
R. STEVEN STACKPOLE.
        Defendant                   :


M E M O R A N D U M


I.    Introduction

        The Defendant, R. Steven Stackpole, filed a motion to
vacate his sentence pursuant to 28 U.S.C. §2255.  The Defendant
raises a claim of ineffective assistance of counsel and a claim
under *Blakely v. Washington*, ___ U.S. ___, 124 S. Ct. 2531, 159
L. Ed. 2d 403 (2004).


II.   Background

        On October 6, 2000, following a jury trial, the
Defendant was convicted of mail fraud in violation of 18 U.S.C.
§ 1341 (Counts I - XI); conspiracy to commit mail fraud in
violation of 18 U.S.C. § 371 (Count XII); conspiracy to commit
money laundering in violation of 18 U.S.C. § 1956(h) (Count
XIII); unlawful monetary transactions in excess of $10,000 in
violation of 18 U.S.C. § 1957 (Counts XIV - XX); and money
laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i) & 2
(Counts LIII - LVII).  Subsequent to his conviction, the

Defendant entered a conditional guilty plea to criminal

forfeiture pursuant to 18 U.S.C. § 982 (Count LVIII).  The

Defendant was sentenced to concurrent terms of 60 months

imprisonment on Counts I - XII, 120 months on Counts XIV - XX,

150 months imprisonment on Counts XIII, LIII - LVII, three years

supervised release on all counts, an assessment of $2,500, and

restitution in the amount of $1,217,699.00.

Stackpole appealed his conviction.  On February 7,

2002, while his appeal was pending, the Defendant filed a § 2255

motion.  We dismissed the motion without prejudice to his filing

another motion should his appeal be denied.  The Defendant's

appeal was denied by the Third Circuit on April 3, 2003.  *United*

*States v. Stackpole*, 64 Fed. Appx. 842 (3d Cir. 2003).  On May

5, 2003, the Defendant again filed a § 2255 motion.  In response

to our order under *United States v. Miller*, 197 F.3d 644 (3d

Cir. 1999), he moved to withdraw the motion and we dismissed it

without prejudice.  Stackpole petitioned for certiorari to the

United States Supreme Court and on October 6, 2003, certiorari

was denied.  *Stackpole v. United States*, 540 U.S. 887, 124 S.

Ct. 219, 157 L. Ed. 2d 158 (2003).

On September 2, 2004, the Defendant initiated these §

2255 proceedings pro se.  In his motion, Stackpole raised the

following issues: (1) that his attorney was ineffective for

failing to object to violations of the Interstate Agreement on

Detainers Act (IADA); and (2) that his sentence was

2

unconstitutional under *Blakely v. Washington*, ___ U.S. ___, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). We directed the Government to file a response. On November 30, 2004, after the government filed its response, the Defendant moved to amend his § 2255 motion. We gave the Government the opportunity to file an opposition brief to the Defendant's motion to amend.

III.  Discussion

     A.  Motion to Amend[1]

          The Defendant seeks to amend his § 2255 motion to add a claim that his attorney was ineffective for failing to object to the court's separate grouping of the mail fraud and money laundering counts at sentencing. In support of his argument, he relies on *United States v. Cordo*, 324 F.3d 223 (3d Cir. 2003).[2] In *Cordo*, the Third Circuit held that the District Court "erred in failing to group [Cordo's] mail fraud and money laundering counts pursuant to § 3D1.2(b), resulting in an incorrect base offense level and sentence." *Cordo*, 324 F.3d at 234. The court reasoned that the money laundering had identifiable victims because the "acts of money laundering and mail fraud were all in

---

[1] The Defendant styled his motion as a motion to supplement which is governed by Rule 15(d) of the Federal Rules of Civil Procedure. The motion, however, is properly considered as a motion to amend under Rule 15(a).

[2] It should be noted that Cordo was Stackpole's co-defendant.

3

furtherance of a single fraudulent scheme." *Id.* at 231-2.  The
Government responded to the Defendant's motion by arguing that
Stackpole cannot show that counsel's performance was deficient
and that *Cordo* is not retroactively applicable to Stackpole's
case.

Under Rule 15(a), a "party may amend his pleading once
as a matter of course at any time before a responsive pleading
is filed.  *United States v. Duffus*, 174 F.3d 333, 336 (3d Cir.
1999).  The Defendant, however, sought to amend after the
government had responded and can only amend his § 2255 motion
upon leave of court.  *Id.* at 336-7.[3]

The Defendant's conviction became final on October 6,
2003.  His § 2255 motion was timely filed.  His motion to amend,
however, was filed on November 30, 2004, almost two months after
the expiration of the one-year statute of limitations.  *See* 28
U.S.C. § 2255.  A district court may permit an amendment to a §
2255 motion after the one-year period if it "provide[s] factual
clarification or amplification" of the original claims; the
original motion was timely filed; and the defendant "does not
seek to add an entirely new claim or new theory of relief."
*United States v. Thomas*, 221 F.3d 430, 436 (3d Cir. 2000).
Stackpole's proposed amendment seeks to add an entirely new

_____

[3] Although the Defendant asserts in his motion that the
Government had yet to respond to his 2255, the Government filed
its response on November 17, 2004.

4

claim to his § 2255 motion and his motion to amend will be denied.[4]

B.    Ineffective Assistance of Counsel

The Defendant's claim of ineffective assistance of counsel is governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Strickland* held that an ineffective assistance of counsel claim requires the petitioner to show: (1) that his counsel's performance fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687-88, 104 S. Ct. at 2064. The reasonableness of counsel's conduct must be judged in light of the facts of the particular case at the time of the event. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.

---

[4] We further note that had we reached the merits of the Defendant's ineffectiveness claim, we would not find trial counsel's performance to be deficient. At sentencing, counsel filed approximately twenty-eight objections to the pre-sentence report, including an objection to a vulnerable victim enhancement that was sustained. *United States v. Maiorano*, 1999 WL 391378 at *2 (E.D. Pa. 1999)(noting that counsel was "extremely effective at sentencing" by lodging numerous objections, including a vulnerable victim objection that was sustained). He also successfully argued that the adjusted offense level for the fraud counts, and not the higher level dictated by the money laundering offenses, should be used to determine the applicable sentence. Further, although there was case law in the Third Circuit indicating that fraud and money laundering counts had been properly grouped together in the past, there was no rule that they must be grouped and counsel is not responsible for predicting the future state of the law. *United States v. Davies*, ____ F.3d ____ (3d Cir. 2004)(stating that counsel has no "duty to predict [what] would become the law of the land.").

5

In analyzing that performance, the court must make every effort "to eliminate the distorting effects of hindsight," and determine whether "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  *Id.*

Once it is found that counsel's performance was deficient, the court must determine if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.*

The Defendant argues that he was denied effective assistance of counsel because at his arraignment, counsel failed to object to the shuttling of the Defendant from federal custody to state custody in violation of the IADA and that counsel was ineffective for failing to move for a dismissal of the charges against him because of the IADA violation.  The Government argues that since the receiving state under the IADA was the United States, Stackpole's counsel could not have been deficient since the Defendant was afforded notice and an opportunity to be heard prior to his return to state custody as is required under the IADA.

The anti-shuttling provision of the IADA provides that:

6

> If trial is not had on any indictment,
> information, or complaint contemplated
> hereby prior to the prisoner's being
> returned to the original place of
> imprisonment pursuant to article V(e)
> hereof, such indictment, information, or
> complaint shall not be of any further force
> or effect, and the court shall enter an
> order dismissing the same with prejudice.

18 U.S.C. App. 2, §2, art. IV(e). However, where the United

States is the receiving state, Section 9 applies. Section 9

provides that:

> Notwithstanding any provision of the
> agreement on detainers to the contrary, in a
> case in which the United States is a
> receiving State[:]
>
> (2) it shall not be a violation of the
> agreement on detainers if prior to trial the
> prisoner is returned to the custody of the
> sending State pursuant to an order of the
> appropriate court issued after reasonable
> notice to the prisoner and the United States
> and an opportunity for a hearing.

18 U.S.C. App. 2, §9(2).

In order for the provisions of the IADA to be

applicable to the Defendant, a detainer must have been issued.

*United States v. Mauro*, 436 U.S. 340, 98 S. Ct. 1834, 56 L. Ed.

2d 329 (1978)(holding that the IADA only applies in transfers to

federal custody when a detainer is filed against a defendant and

that the use of a writ of habeas corpus *ad prosequendum*, absent

the filing of detainer prior to the writ, does not trigger the

IADA). The Defendant has provided no evidence to show that a

detainer was ever issued in his case. Assuming, *arguendo*, that

one was issued, we note that the Defendant agreed at his

7

arraignment[5] to be released on his own recognizance from federal custody, with the understanding that he would be returning to state custody. *United States v. Moses*, 1996 WL 363921 at *4 (E.D. Pa. 1996)("Unlike constitutional rights, courts have held that a waiver of the rights secured by the IADA need not be knowing and voluntary.")(citing cases); *Morrison v. Stepankski*, 839 F.Supp. 1130, 1138 n.10 (M.D. Pa. 1993)("[M]ost courts have held that voluntariness requires no more than a showing of conduct by the defendant or his attorney inconsistent with the preservation of [IADA] rights.").

Further, considering the severity of the offense and circumstances surrounding Stackpole's return to state custody, we fail to see how the Defendant could show prejudice since the IADA also provides that when the United States is the receiving state:

> any order of a court dismissing any
> indictment, information, or complaint may be
> *with or without prejudice.* In determining
> whether to dismiss the case with or without
> prejudice, the court shall consider, among
> others, each of the following factors: The
> seriousness of the offense; the facts and
> circumstances of the case which led to the
> dismissal; and the impact of a reprosecution
> on the administration of the agreement on
> detainers and on the administration of
> justice.

18 U.S.C. App. 2, §9(1)(emphasis added).

---

[5] The Defendant claims that the declaration provided by the Government shows that his attorney did not speak with him about his return to state custody until after his hearing. We do not construe the declaration in this way.

8

C.  Blakely

The Defendant maintains that his sentence was unconstitutionally enhanced by the court at sentencing in violation of *Blakely v. Washington,* ___ U.S. ___, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). The Government argues that *Blakely* cannot be applied retroactively to cases on collateral review as it announces a new procedural, and not a new substantive, rule.

The Third Circuit has held that *Apprendi v. New Jersey,* 530 U. S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) is not retroactive on collateral review. *United States v. Swinton,* 333 F.3d 481, 491 (3d Cir. 2003). We have previously determined that *Blakely,* as a result of the Third Circuit's decision in *Swinton,* does not apply on collateral review. See *United States v. Shade,* No. 1:CR-02-144-02, slip op. at 5 (M.D. Pa. Sep. 7, 2004)(Cladwell, J.); *see also United States v. Stoltz,* 325 F. Supp. 2d 982, 987 (D. Minn. 2004). We do not find that the Court's recent decision in *United States v. Booker,* ___ U.S. ___, 2005 WL 50108 (2005), alters this analysis.

IV.  Conclusion

Based on the foregoing discussion, we will issue an order denying Petitioner's claims and his motion to amend. The order will also deny a certificate of appealability, based on

the analysis in this memorandum.  However, Petitioner is advised that he has the right for sixty (60) days to appeal this order and that our denial of a certificate of appealability does not prevent him from doing so, as long as he also seeks a certificate of appealability from the court of appeals.  *See* Federal Rule of Appellate Procedure 22.

We will enter an appropriate order.


/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: January 19, 2005

10

FILED
HARRISBURG, PA

JAN 19 2005

MARY E. _____, CLERK
Per _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,                    :
        Plaintiff

                               :

        vs.                          : CRIMINAL NO. 1:CR-00-46-01
                                 CIVIL NO. 1:CV-04-1953
                               :

R. STEVEN STACKPOLE,
        Defendant                    :


O R D E R

        AND NOW, this 19th day of January, 2005, it is Ordered
that:

        1. Defendant's 2255 motion (Doc. 237) is
denied.

        2. Defendant's motion to amend (Doc. 244)
is denied.

        3. Based on the accompanying memorandum,
a certificate of appealability is denied.

        4. The Clerk of Court shall close this
file.


                        /s/William W. Caldwell
                      William W. Caldwell
                      United States District Judge